IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Christopher A. Woody, | ) | Civil Action No.:2:15-cv-2574-MBS-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Warden Robert Stevenson, | ) | |
| | ) | |
| Respondent. | ) | |

     The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 6; *see also* Dkt. No. 7.)

     Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

     Petitioner brought the instant habeas action in June of 2015. (*See* Dkt. No. 1; Dkt. No. 1-3.) On August 24, 2015, Respondent filed a Motion for Summary Judgment. (Dkt. No. 6; *see also* Dkt. No. 7.) Petitioner filed a Response in Opposition to the Motion for Summary Judgment on or about September 28, 2015. (Dkt. No. 10.)

## PROCEDURAL HISTORY

     Petitioner is currently confined at Broad River Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In February of 2005, the York County Grand Jury indicted Petitioner for murder, possession of a firearm during the commission of a violent crime, criminal conspiracy, and unlawful carrying of a pistol. (*See* R. at 1154–59.) Petitioner was represented by John Delgado, Esquire. (*See* R. at 1.) Petitioner proceeded to a jury trial before the Honorable Lee S. Alford on May 2 through May 6 of 2005. (R. at 1–855.) On May 6, 2005, the jury convicted Petitioner as charged. (*See* R. at 834–38.) Judge Alford sentenced Petitioner to life without parole for murder, to five years for possession of a firearm during the commission of a violent crime, to five

1

years for conspiracy to commit murder, and to one year for unlawfully carrying a firearm. (R. at 853.) The sentences were set to run concurrently. (*See* R. at 853.)

Petitioner appealed and was represented by Joseph L. Savitz, III, Esquire, of the South Carolina Commission on Indigent Defense. (*See* R. at 856–65.) In his Final Brief of Appellant, Petitioner asserted "[t]he trial judge committed reversible error by denying a mistrial after the Assistant Solicitor argued in essence that the judge expected the jury to find appellant guilty." (R. at 859.) In an unpublished opinion filed on September 11, 2008, the South Carolina Court of Appeals affirmed the judgment of the lower court. (*See* R. at 881–83.) Petitioner filed a petition for rehearing; in an Order dated December 19, 2008, the South Carolina Court of Appeals denied that petition. (*See* R. at 884–86, 893–94.)

Petitioner, through Mr. Savitz, filed a petition for a writ of certiorari wherein he argued the same issue that he had raised to the court of appeals. (*See* R. at 895–902.) The Supreme Court of South Carolina denied the petition on November 4, 2009. (*See* R. at 918–19.) The matter was remitted to the lower court on November 9, 2009. (R. at 920.)

On August 2, 2010, Petitioner filed an application for post-conviction relief ("PCR"). (*See* R. at 921–46.) Petitioner raised the following grounds for relief in his application (verbatim):

> The Applicant's Right to "Effective Assistance Of Counsel," As Guaranteed By The Sixth Amendment To The United States Constitution And South Carolina Law Was Violated By The Following Failures And/Or Omissions Made By Trial Counsel:

> Issue 1.    Trial Counsel Failed to adequately research Constitutional and legal issues material to the trial he prepared and to prudently preserve those material legal issues for Direct Appeal.

> Issue 2.    Trial Counsel Failed to conduct sufficient pretrial research and investigation to adequately evaluate and challenge the State's gunshot residue testimony.

> Issue 3.    Trial Counsel Failed to interview the Applicant's codefendant's pretrial Thus, Counsel was unable to anticipate and prepare to counter, through targeted research and investigation, the difficulties and problems likely to arise through his attempts to introduce "exculpatory" and corroborative evidence from those witnesses.

Issue 4.          Trial Counsel Failed to present readily available evidence pertaining to the alleged Victim's known reputation for violence. The evidence available was based on incidents that the Police were aware of involving the deceased acting in criminal/drug related matters associated with violence.

Issue 5.          Trial Counsel Failed to take exception to the overly complex and confusing self-defense Jury charge.

The Applicant's Right To 'Effective Assistance Of Counsel,' As Guaranteed By The Sixth And Fourteenth Amendment To The United States Constitution And South Carolina Law Was Violated By Appellate Counsel's Failures To Appeal The Following Issues:

Issue 6.          The Directed Verdict Motion made relative to the 'Conspiracy to Commit Murder' offense.

Issue 7.          The trial Judge's Abuse of Discretion by excluding codefendant's exculpatory statements from the defense's case-in-chief. The trial Judge's decision was a (reversible) prejudicial error of law, as he declared those statements to be 'testimonial hearsay' that was inadmissible under any circumstances.

Issue 8.          A new non-retroactive watershed rule of law holding that; (A jury charge explaining that 'Malice Aforethought' may be inferred by the use of a deadly weapon is an unconstitutional charge of law when "Self Defense" has been properly and legitimately raised at trial).

The Applicant's Rights To "Due Process" And "Equal Protection" As Guaranteed By The Fifth And Fourteenth Amendments To The United States Constitution And South Carolina Law Was Violated Based On Prosecutorial Misconduct Due To The State's Acquisition Of Indictments By Methods Encompassing The Following Specific Acts:

Issue 9.          The Solicitor/Assistant Solicitor acquired the indictments used to prosecute the Applicant by way of a total non-compliance with a mandatory statute that is jurisdictional in nature.

Issue 10.         The Solicitor/Assistant Solicitor acquired the indictments used to prosecute the Applicant by way of both "intrinsic and extrinsic" fraud.

Issue 11.         The Solicitor/Assistant Solicitor acquired the indictments by acts of "perjury" as defined by State Law.

3

Issue 12.    The Solicitor/Assistant Solicitor acquired the indictments by acts defined as "Criminal Conspiracy" by State Law.

Issue 13.    Facts have arisen that implicate whether the Trial Court properly had either "personal" and/or "subject matter" jurisdiction to render judgments and sentences against the Applicant based on the improper and illegally obtained indictments.

Applicant's Rights to "Due Process" and "Equal Protection" as Guaranteed By The Fifth and Fourteenth Amendments To The U.S. Const. And State Law was violated by Prosecutorial Misconduct.

Issue 14.    Solicitor/Assistant Solicitor's Acts of Perjury And/Or which caused Applicant to miss making contemporaneous objection to the grand jury and its indictment, and/or moving for void judgment after conviction.

Applicant's Rights to Effective Assistance of Counsel" as Guaranteed By the Sixth and Fourteenth Amendments of the U.S. Const. And State Law was violated

Issue 15.    Trial Counsel Failed to Request Jury Instructions on The lesser Included Offense of Voluntary Manslaughter.

(R. at 923–38.) On April 29, 2013, Petitioner, through PCR counsel Harry L. Devoe, Jr., filed an amended PCR application supplementing the claims of his PCR application. (R. at 952–56.)

On May 13, 2013, an evidentiary hearing was held before the Honorable John C. Hayes, III. (R. at 957–1094.) Petitioner was present and represented by Mr. Devoe. (*See* R. at 957.) In an order filed May 24, 2013, Judge Hayes denied the application for post-conviction relief and dismissed the petition. (R. at 1111–17.) Mr. Devoe subsequently submitted a memorandum in support of the PCR application, and Judge Hayes indicated by letter that he had already issued an order in the case. (R. at 1118–27.) Thereafter, Mr. Devoe filed a Rule 59(e) motion on Petitioner's behalf. (R. at 1128–40.) On July 16, 2013, Judge Hayes issued an order denying the Rule 59(e) motion. (R. at 1145–53.)

Petitioner, through Tara Dawn Shurling, Esquire, filed a Petition for Writ of Certiorari on September 10, 2014. (*See* Dkt. No. 7-8.) Through counsel, Petitioner raised the following issues:

4

I.      Did Petitioner's original appointed attorney violate his right to counsel by failing to be present at Applicant's bond hearing?

II.     Did Petitioner's Trial Attorney fail to use readily available documentation to support the defense in the Jackson v. Denno hearing where Court documents established that Petitioner had been appointed Counsel, at his request, prior to being questioned by law enforcement and before his statement was issues [sic]?

III.    Were Petitioner's rights to Discovery of potentially exculpatory material violated where the State failed to turn over documents relating to the appointment of counsel in petitioner's case?

IV.     Did Trial Counsel fail to conduct sufficient pretrial research and investigation to adequately evaluate and challenge the State's gunshot residue testimony?

V.      Did Trial Counsel fail to provide Petitioner effective assistance of counsel in that he neglected to request jury instruction on the lesser included offense of voluntary manslaughter where the evidence adduced at trial supported a charge on the lesser-included offense.?

(Dkt. No. 7-8 at 3 of 26.) The South Carolina Supreme Court entered an order denying the petition for a writ of certiorari on March 18, 2015. (Dkt. No. 7-10.) The matter was remitted to the lower court on April 3, 2015. (Dkt. No. 7-11.)

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review (verbatim):

**Ground One**: Ineffective Assitance of Trial Counsel and/or related Denial of Due Process
**Supporting facts**: During Petitioner's Jackson v. Denno hearing he testified that he had requested an attorney when he first saw the police and on the day he was arrested. He also testified that he repeated that request to Officers Hutchinson and Blackwelder while being held at the Rock Hill Jail and to the Judge at his bond hearing. At the PCR hearing trial counsel Delgado was shown an Order from the York County Clerk of Courts Office Appointing counsel to represent Petitioner. The Order was dated June 28, 2005 which is one day before the taking of Petitioner's statement on June 29, 2005. Trial counsel acknowledge that the document could have helped Petitioner's case at the Jackson v Denno hearing. Petitioner's motion seeking to supress his statement was denied for lack of supporting evidence.

However, trial counsel testified at the PCR hearing that he could not recall if the document had been in discovery and stated he could not remember "whether he had that or whether I got that." If as trial counsel appears to suggest, he may have had the document at the time of the Jackson v. Denno hearing, then his failure to make use

5

of the evidence constitutes ineffective assistance of counsel. Especially in light of the fact that trial counsel admitted the document may have assisted Petitioner during the Jackson v Denno proceedings. Petitioner was prejudiced by the fact that had the document been introduced it would have established his claim that he had requested counsel before he gave his statement.

Based on the facts, it's fair to infer that trial counsel was not in possession of the document at the time of Petitioners Jackson v Denno hearing. Given that trial counsel admitted the document could have helped the defense at the hearing, the States failure to turn the document over with the discovery materials constitutes a violation of Petitioners due rights to pursuant to Brady.

**Ground Two**: Ineffective Assistance of Trial Counsel
**Supporting facts**: Trial counsel failed to conduct necessary pretrial research and investigation to adequately evaluate and challenge the State's case. During trial court proceedings the state entered testimony from several of it's own expert witnesses claiming that the victim had been shot from behind and that no evidence existed showing that he either had a gun or had been reaching behind his back for a gun as claimed by Petitioner. The state's case and proof of malice and criminal intent were largely built around those three allegations. The State did find residue on the victims left palm that tested positive in initial testing as gunshot residue ("GSR"). But for some unkown reason the state failed to conduct conformation testing.

At the PCR hearing, GSR expert Steven Howard testified that in his opinion ". . . the residue found on the victim's left palm was in fact gunshot residue." Furthermore, Mr. Howard was preplexed as to why the State failed to conduct the conformation testing. Mr. Howard also testified that it was not unusual to find a right-handed man who can use a gun with either hand, and that given the pattern of the GSR the victim most likely got it on his left palm from handling a weapon that had been previously fired. That because of the distance of the shots no GSR could have found its way onto the victim from Petitioners weapon.

At the PCR hearing trace expert and pathologist Dr. Adel Shaker testified as to how in his opinion the victim had come to have GSR on his left palm. That from holding a weapon. Dr. Shaker further testified that the victim had not been shot from behind as claimed by the State's expert, but instead, from the side as claimed by Petitioner in his statement. That because of the angle of the victim's 45 caliber wound to the inside of his left forearm it would have been impossible to have occurred had Petitioner been standing directly behind. Dr. Shaker went on to demonstrate on the stand how the victim had received the wound to the inside of his left forearm. Showing how the victims left forearm would be turned and exposed to a side shot if the victim had been reaching behind his back with his left hand.

The conclusions and opinions of experts Steven Howard and Dr. Adel Shaker would have had major impact at trial in that it contradicted the evidence entered by the State to establish malice and criminal intent. The importance of this expert testimony can not be overstated because the State is required to prove both malice and criminal intent before a murder conviction can be found in the state of South

Carolina. Most certainly the expert opinions of those such as Mr. Howard and Dr. Shaker should have been available to the jury during its deliberation process.

Additionally, the expert testimony would have aided in Petitioner's claim of self-defense.

**Ground Three**: Ineffective Assistance of Trial Counsel and cause for not raising it at the PCR proceedings.

**Supporting facts**: Trial Counsel failed to provide Petitioner effective assistance of counsel in that he failed to request jury instructions on the lesser included offense of voluntary manslaughter when the evidence presented at trial supported such a charge. In Applicants pro se PCR application the Petitioner clearly asserts that trial counsel was ineffective for failing to request a jury charge on the lesser included offense. However during the evidentiary hearing in the PCR matter Counsel Devoe failed to ask trial counsel anything about the lesser included offense issue until his re-direct examination at which time a state's objection was sustained on the ground that the inquiry was outside the proper scope of redirect. Yet in both his memorandum and in subsequent Rule 59(e) motion PCR counsel argues the issue as a basis for relief. The PCR Courts Order denying Petitioners Rule 59(e) motion contains an analysis of the issue stating that the lower court ". . . very well may have afforded Applicant a charge on voluntary manslaughter." Petitioner would also argue that his receipt of such a charge was even more compelling in light of his statement claiming that he shot because the victim was reaching behind his back for a weapon.

Furthermore, in Petitioners case the jury came back during its deliberations with questions about the law as it Applies to self defense. This strongly indicates that the jury was struggling with the question of Petitioner's liability for murder. That being the case, it is reasonable to conclude that the jury may have found Petitioner guilty of lesser-included charge instead of murder had that option been presented.

According Petitioner seeks this Court to find cause pursuant to Martinez for his failure to raise the lesser included offense issue at the PCR hearing.

**Ground Four**: Extrinsic Fraud upon the Court/Prosecutorial Misconduct/Denial of Due Process or Equal Protection of Law Additionally cause for PCR attorney failure to raise the issue

**Supporting facts**: It is a misdemeanor offense to give false information on a document required by the law of South Carolina (see S.C. Code of Law, Section 16-9-10 A(2), B(2) and C. "Perjury and Subornation of Perjury."

Criminal Indictments are such documents that are required by state law. (see S.C. Code of Law, Section 17-19-10 (2003), and at the time of Petitioner's offense could only be obtained through a grand jury convened under the jurisdict of a Court of General Sessions.

In this case, Petitioners indictments allege they were true billed and that "at a Court of General Sessions convened on February 17, 2005 the Grand Jurors of York County . . ." indicted Petitioner on all charges that he was later convicted of. Moreover, the indictments were prepared and signed off on by Solicitor Pope of York County.

However, Petitioner obtained a certified true copy of the S.C. Supreme Court Administrations court calander showing that NO Court of General Sessions had been scheduled or convened on February 17, 2005 as alleged in the indictments prepared and signed by Solicitor Pope. Since no Court of General Sessions had been held on February 17, 2005 there could have been NO legally constituted grand jury in place at the time to indict Petitioner.

Therefore, because Solicitor Pope printed false court term information in the State required indictments he is guilty of a violation of Section 16-9-10, a misdemeanor offense. Perjury by an Officer of the Court in furtherance of a conviction constitutes Extrensic Fraud Upon the Court and Prosecutorial Misconduct.

The acts of Solicitor Pope in printing and signing an indictment containing false court term information operated to cover up the fact that Petitioner's indictments had been obtained through an illegal process and thereby caused him to unknowingly and involuntarily forfeit his constitutional and statutory rights to make a contemporaneous objection to the fatally defective indictments.

(Dkt. No. 1.)

## APPLICABLE LAW

### Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990).

### Habeas Standard of Review

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d),

as amended. *Lindh v. Murphy*, 521 U.S. 320, 322–23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 6; *see also* Dkt. No. 7.) For the reasons set forth herein, the undersigned recommends granting Respondent's motion.

## A.    Ground One

Petitioner asserts in Ground One that trial counsel was ineffective for failing to introduce a particular document, which he describes as an order appointing counsel to represent Petitioner, during the *Jackson v. Denno*[1] hearing prior to Petitioner's trial. (Dkt. No. 1.) According to Petitioner, the order from the York County Clerk of Court appointing counsel was dated the day before

---

[1] 378 U.S. 368 (1964).

Petitioner gave his statement to police.[2] (*Id.*) Petitioner claims that he "was prejudiced by the fact that had the document been introduced it would have established his claim that he had requested counsel before he gave his statement." (*Id.*) In the alternative, Petitioner asserts that the State committed a *Brady*[3] violation by failing to turn the order over to trial counsel during discovery. (*Id.*)

Respondent contends that Petitioner is not entitled to relief on his Ground One because Petitioner failed to establish either deficient performance or prejudice as to trial counsel's representation during the *Jackson v. Denno* hearing. Additionally, Respondent argues that Petitioner cannot show a *Brady* violation. After reviewing the record and both parties' arguments, the undersigned recommends concluding that Petitioner is not entitled to relief on the merits of Ground One.

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[2] In the petition Petitioner mistakenly gives the year as 2005 rather than 2004.

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.* While *Strickland* itself is a deferential standard, when both § 2254(d) and *Strickland* apply, "review is doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The PCR judge did not specifically address the claim that trial counsel was ineffective for failing to introduce the appointment of counsel order during the *Jackson v. Denno* hearing.[4] (*See* R. at 1111–17, 1145–53.) But Petitioner's ineffective assistance of counsel claim lacks merit as he has failed to establish either prong of *Strickland*.

At the *Jackson v. Denno* hearing, the State presented the testimony of Charlene Blackwelder, who testified that she took a statement from Petitioner on Tuesday, June 29, 2004. (R. at 98–104.) Blackwelder testified that to her knowledge, Petitioner had not asked for an attorney prior to her questioning him. (R. at 98–99.) Blackwelder also testified that she read through Petitioner's *Miranda* rights with him and he waived those rights prior to making his statement. (R. at 99–104.) Trial counsel then presented Petitioner as a witness and questioned him about his requests for counsel prior to making his statement. (R. at 114–15.) Though trial counsel did not present an appointment order during the hearing (*see* R. at 113–25), Petitioner testified that, at his bond hearing (which he believed had been on a Monday), he asked when he would get an attorney, and the judge responded

---

[4] Respondent states that Petitioner's Ground One was considered by the PCR court. (*See* Dkt. No. 7 at 18.) While the undersigned agrees that Petitioner's *Brady* violation claim is properly preserved for this Court's review, the undersigned disagrees that Petitioner's ineffective assistance of counsel claim is similarly preserved. In the undersigned's view, the PCR court's finding that Petitioner failed to meet his burden on his claim that trial counsel was ineffective for failures "during the discovery stage of the trial process" does not encompass an alleged failure during the pretrial *Jackson v. Denno* hearing. Nevertheless, the undersigned considers the merits of the ineffective assistance of counsel claim since procedural bar is an affirmative defense that may be waived if not raised in the district court. *See Gray v. Netherland*, 518 U.S. 152, 165–66 (1996).

"I don't know." (R. at 115.) Petitioner testified on both direct examination and cross examination that he asked for an attorney multiple times before giving his statement to police (R. at 113–21). Petitioner also conceded during cross-examination that he made the statement voluntarily, but he claimed he was not paying attention when he waived his rights, saying "I wasn't listening to my rights. I was trying to hurry up and tell them what happened. I was hoping to go home, to be honest with you." (R. at 120.) Ultimately, the trial court admitted Petitioner's statement, finding that the State had shown by a preponderance of the evidence that Petitioner's statement was "freely and voluntarily given with full advice concerning his constitutional rights and a knowing, intelligent waiver of those rights that he made that statement." (R. at 123.)

At the PCR evidentiary hearing, PCR counsel questioned trial counsel on whether he believed the *Jackson v. Denno* hearing had been "handled . . . properly." (R. at 995–98.) PCR counsel then asked trial counsel about a particular document:

> Q.   Well do you remember the last time we met which was we had the case continued last year?
>
> A.   All right.
>
> Q.   And I handed you a document from the Clerk of Court's office whereby one was denied and an attorney was appointed.
>
> A.   All right, sir, if you say so.
>
> Q.   On June 28th.
>
> A.   All right.
>
> Q.   Which is the day before Sergeant Blackwell of the Rock Hill City Police interviewed Mr. Woody in her office.
>
> A.   All right, sir.
>
> . . . .
>
> A.   . . . I recall us meeting. If you say you gave me something you may have I don't recall what that was but I recall us talking about this in this courtroom maybe a year or so ago.

Q.    But that's what it was.  A two page—it's a front and back of copies, it's two pages.

A.    All right, sir.

Q.    Clocked by the Clerk of Court of York County on July 28th.

A.    All right.

Q.    2004.

A.    All right, sir.  I don't recall necessarily how—So your point is I should have objected to that coming into evidence against—

Q.    No, I'm asking you wouldn't that help you in your Jackson v. Denno hearing if you had that document?

A.    I—It could have, sir.  I don't recall exactly how that would have deflected whatever Chris said during that statement.  I mean he could have made a voluntary statement whether or not that—he could have made a voluntary statement at any time whether or not he was Marandized or not.  But the point being, sir, it possibly could have helped him.

Q.    And the Solicitor did not give you a copy of that.  In your discovery from the Solicitor he didn't give you a copy of that did he?

A.    That, sir, I'll be candid with you I can't say to you truthfully one way or the other that happened.  I don't know the answer to that.

Q.    Well if you had had it would you have raised that to the judge at that time of that Jackson v. Denno hearing?

A.    I think I would have been able to point that out to the court as to whether or not it was a voluntary statement or whether or not the statement was made under his constitutional rights to counsel and to a fair trial and the Fifth and Sixth Amendments.  But I don't recall whether he had that or whether I got that.  I'll be candid with you, Mr. Devoe, I do not recall.

(R. at 996–98.)  PCR counsel never introduced the document that he questioned trial counsel about.[5]

---

[5] Attached to his response to the motion for summary judgment, Petitioner submitted multiple documents that appear to have been related to the appointment of counsel.  (*See* Dkt. No. 10-1 at 17–21.)  Two pages are potentially the document referred to by PCR counsel during the PCR evidentiary hearing—both are titled "NOTICE OF DATE AND TIME OF INITIAL APPEARANCE FOR **APPROVED** PUBLIC DEFENDER CLIENTS" and set forth the date and time of Petitioner's initial appearance and further indicate that Petitioner was approved for a public defender.  (*See* Dkt. No. 10-1 at 17–18.)  The pages are signed by both Petitioner and a judge—on one page the signatures are dated June 28, 2004, and on the other pages the signatures are dated June 30, 2004 (though both appear to have been clocked in with the Clerk's Office on July 1, 2004 at 10:51 am).  (*See id.*) Petitioner also submitted an Affidavit of Indigency and Application for Counsel (also clocked in with

The undersigned first considers whether trial counsel was deficient for failing to introduce any appointment documents. The United States Supreme Court has instructed that "court[s] should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Petitioner never established that trial counsel had any appointment documents, nor is it clear from the record exactly what document(s) he believes should have been introduced at the *Jackson v. Denno* hearing since PCR counsel only generally questioned trial counsel about an appointment document and never introduced the document. In any event, in this case, trial counsel presented evidence (through Petitioner's own testimony) that Petitioner requested counsel prior to giving his statement to police. The undersigned is not persuaded that trial counsel provided deficient representation by failing to introduce further evidence that Petitioner had requested counsel by introducing the appointment order during the *Jackson v. Denno* hearing.

However, even assuming that trial counsel had the appointment document and was deficient for failing to introduce it, Petitioner was not prejudiced where Petitioner's own testimony at the *Jackson v. Denno* hearing established that his statement was voluntary. Again, this specific claim was not considered by the PCR court, but in its consideration of the merits of Petitioner's *Brady* violation claim, the PCR court did consider whether Petitioner was prejudiced by not having the document introduced. The PCR court found no prejudice based on the following reasoning:

> [A] review of the *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774 (1964), hearing reflects that the Applicant, after being mirandized, did freely, voluntarily, knowingly, and intelligently give a statement affirmatively waiving his right to remain silent and his right to counsel. There is no testimony to support an argument that Applicant was unaware of his right to counsel, regardless of whether or not Applicant signed a form requesting counsel. The Trial Transcript reflects Applicant appeared to understand

the Clerk's Office on July 1, 2004 at 10:51). (*See* Dkt. No. 10-1 at 19.) Another document is entitled "ORDER OF APPOINTMENT OF LEGAL COUNSEL OF INDIGENT DEFENDANT." (*See* Dkt. No. 10-1 at 20.)

It does not appear that any of these documents were made a part of the record at the trial or at the PCR evidentiary hearing.

14

what the interviewer was saying, was read his rights, and was neither threatened nor promised anything. Applicant had fifteen years of "schooling," did not appear to be under the influence at the time of the giving of the statement, and was free to, "at any time," stop answering questions. Applicant reviewed the written statement before he signed and was given the opportunity to make changes to the statement. (*See* Trial Transcript p. 99, L9 through p. 124, L 14).

In regard to the issue, further observations are warranted, the trial judge asked questions of the interviewer as to Applicant's request for an attorney and any request to stop the interview by Applicant. (TR 112, LL 8-14). These questions were both answered in the negative. Also, the record reflects that Applicant's request for an attorney was presented to the trial judge at the *Jackson v. Denno*, *supra*, hearing. While the actual form was not produced, Applicant testified he asked for an attorney on the night of his arrest and that he had asked for an attorney appointment from the bond judge. (TR p. 114, L 13 through p. 115, L 16). Applicant also testified he asked for an attorney at the time of his interrogation, but that he understood his rights as read to him from a "statement form." (TR p. 99, LL 18-25). Applicant, during the *Jackson v. Denno*, *supra*, hearing, repeatedly asserted he wanted to talk to an attorney, but acknowledged that he signed the "statement of rights" form, that he understood the form, that he gave his statement "voluntarily," and that he was in a hurry to "tell them what happened" in hopes he would get to go home. (TR p. 113, L 10 through p. 121, L 7).

Applicant's position that the State suppressed his form from the bond hearing is without merit and if it did have merit would not have been prejudicial to Applicant based on his testimony at the *Jackson v. Denno* hearing.

(R. at 1146–47.) As outlined above and in Respondent's return, the record supports the PCR court's findings. Moreover, the PCR court's findings regarding prejudice are similarly applicable in the context of ineffective assistance of counsel. Petitioner now asserts that he "was prejudiced by the fact that had the document been introduced it would have established his claim that he had requested counsel before he gave his statement." (Dkt. No. 1 at 6). However, the issue at the *Jackson v. Denno* hearing was whether Petitioner had been advised of his rights and had knowingly and voluntarily waived them to make his statement to police. The trial judge articulated the test as "whether the confession was a product of an essentially free and unconstrained choice by its maker[,]" (R. at 23), and the trial court found that it was in Petitioner's case. As trial counsel noted during the PCR evidentiary hearing, the appointment of a public defender would not preclude Petitioner from making a voluntary statement to police. (R. at 997.) Indeed, the United States Supreme Court has found that

a defendant can waive his *Miranda* rights and make a statement to police despite having previously requested and been appointed counsel:

> Our precedents also place beyond a reasonable doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled. And when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the *Miranda* rights purportedly have their source in the Fifth Amendment . . . .

*Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (internal citations omitted).[6] Thus, Petitioner has failed to show resulting prejudice by trial counsel's alleged failure.

Even assuming trial counsel was ineffective in failing to present the appointment documents, and Petitioner's statement should have been suppressed, the State presented overwhelming evidence of guilt that Petitioner shot Arvell Darrell Bagley ("Victim"). The State presented eyewitness testimony from Kimberly Bowden, who witnessed the shooting. (R. at 154–64.) Bowden testified that on the night of the shooting she saw a champagne Maxima with three occupants make a U-turn and follow Victim's car into a parking lot at her apartment complex. (R. at 154–57, 162.) She then saw Victim get out of his car and walk toward the complex, at which time Victim called out to her, and they began speaking as she walked toward him. (R. at 158.) Bowden saw the Maxima pull up behind Victim[7] and assumed "it was just some of his home boys coming[,]" so she started to turn

---

[6] The *Montejo* case overruled *Michigan v. Jackson*, 475 U.S. 625 (1986), a case where the Supreme Court held that if police initiate interrogation after defendant's assertion, at arraignment or similar proceeding, of his right to counsel, any waiver of defendant's right to counsel for that police-initiated interrogation is invalid. *Michigan* was the law at the time of Petitioner's arrest. Assuming the bond documents are legitimate, under the Supreme Court law that was valid at the time of his trial, Petitioner's statement would have been invalid <u>if</u> it was police-initiated, which is not clear from this record. By the time of the PCR hearing, the *Michigan* case had been overruled. Even if counsel had the bond documents and succeeded in getting the statement suppressed, as set forth *infra* the State's evidence, even without the statement, was overwhelming. The Petitioner cannot show prejudice from trial counsel's failure to introduce the bond documents into evidence at the *Jackson v. Denno* hearing.

[7] Bowden testified that Victim did not even see the car behind him. (R. at 160.)

around. (R. at 159.) According to Bowden, "soon as I go to turn around, that's when they started shooting and I ran . . . ." (R. at 159.) Bowden went into her house to call 911, looked out of her blinds, and saw a man standing outside the car and pointing a gun. (R. at 161–62.) The man got in the Maxima, and the car pulled off. (R. at 162.) Bowden then ran outside and found Victim lying on the ground with gunshot wounds. (R. at 163–64.) A forensic pathologist testified that Victim suffered four gunshot wounds—one from a .25 caliber weapon to his left chest and three from a .45 caliber weapon to his lower back, his left forearm, and the back of his head. (R. at 299–319.) According to the forensic pathologist, the .25 to the chest and the .45 to the head were both fatal. (R. at 319.)

The State presented a number of witnesses who were at the apartment complex that night to corroborate Bowden's testimony—those witnesses all saw a light colored Maxima driving away from the complex immediately after hearing a number of gunshots. (R. at 188–89, 207–08, 217–18.) The State also presented evidence through various law enforcement witnesses to establish a connection between Petitioner, the Maxima, and the .45 caliber gun used to shoot Victim. Based on their investigation, the police quickly developed Petitioner and Desmond and Debrezio Campbell as suspects and located the Maxima nearby at another apartment complex. (R. at 345–51.) Police found Petitioner and Debrezio Campbell inside one of the apartments at that complex. (R. at 348–49.) The State established at trial that the Maxima was registered to Petitioner's relative, who lived in Danville, Virginia, where Petitioner was from. (R. at 346–52.) When police searched the Maxima, they found a .45 caliber gun that was registered to Petitioner in Virginia. (R. at 354.) A firearms and tool marks expert connected that specific gun to the bullets and fragments recovered from Victim's body and to the .45 caliber shell casings found at the crime scene. (R. at 530–37.)

In light of the overwhelming evidence of guilt presented by the State, it is highly unlikely that, had Petitioner's statement been suppressed, the jury would have declined to convict Petitioner

17

absent his confession. *See Golphin v. Branker*, 519 F.3d 168, 189–92 (4th Cir. 2008) (declining to grant § 2254 relief, even assuming a state court unreasonably applied *Miranda* and *Edwards* when it affirmed the admission of a confession, where there was overwhelming evidence of guilt and the court could not find that the admission of the confession "substantially swayed" the jury). Consequently, the undersigned recommends granting Respondent's motion for summary judgment.

Turning now to the alleged *Brady* violation, the PCR court considered whether Petitioner established that the State "suppressed" the form appointing counsel and found that claim to be without merit. There is fair support for the PCR court's finding in the record. And the undersigned cannot say that the state court's rejection of that claim was contrary to, or an unreasonable application of, clearly established federal law, nor did the state court adjudication result in an unreasonable determination of the facts. "A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006). Evidence that is not disclosed is suppressed for *Brady* purposes even when it is "known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). Evidence is favorable if it is either exculpatory or impeaching. *See, e.g.*, *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood*, 547 U.S. at 870 (internal quotation marks omitted). As Respondent notes in his return, the documents that Petitioner claims the State withheld were held by the Clerk of Court and the public defenders' office, and Petitioner initiated that paperwork. (*See* R. at 965–67.) The PCR court reasonably rejected Petitioner's *Brady* violation claim, and Petitioner is therefore not entitled to federal habeas relief on Ground One.

## B.     Ground Two

Petitioner contends in Ground Two that trial counsel was ineffective for failing to conduct a proper investigation into the gunshot residue ("GSR") on Victim's hand. Respondent asserts that

the PCR court made reasonable factual findings and reasonably applied federal precedent in denying

this same allegation.  The undersigned agrees.

The PCR court addressed this claim as follows:

> At the Applicant's PCR hearing, the bulk of the evidence presented, if not the totality, was testimony concerning the gunshot residue found on the victim in this case and Trial Attorney's decision against hiring an expert in gunshot residue for the Applicant's defense.

> The Applicant called as his first witness B.J. Barrowclough, Deputy Public Defender for York County.  Mr. Barrowclough testified that the York County Public Defender's Office represented Mr. Woody, as well as his co-defendants, Debrezio Campbell and Desmond Campbell.  It was later determined that there was a conflict in representation of the three co-defendants together by the Public Defender's Office.  Mr. Barrowclough testified that, based on the conflict, his office ceased representation of the Applicant and Desmond Campbell.  The Applicant's counsel attempted to question Mr. Barrowclough about the *Jackson v. Denno* hearing conducted in the Applicant's pre-trial; however, Mr. Barrowclough said that he was not present for the hearing and, therefore, could not attest to what was or was not argued in such hearing.

> The Applicant then called his trial counsel, John Delgado (Trial Counsel), as a witness.  Trial Counsel testified that the Applicant refused a thirty (30) year plea offer from the solicitor.  Trial Counsel testified that the Applicant told him that he was scared he would be killed the night of the crime and that he had seen the victim reaching behind for a gun when the victim was shot.  Trial Counsel testified that, based on these allegations by the Applicant, the best and only defense for Applicant was an "imperfect self-defense."  Trial Counsel testified that there existed many facts adverse to Applicant's self-defense, making it difficult to argue that the Applicant was without fault in bringing about the crime.  Mr. Delgado testified to the existence of such adverse facts as the Applicant advanced to the scene of the crime while in possession of his loaded .45 caliber gun without a valid SC concealed weapons permit, Applicant knew that a drug deal was going to take place at the scene of the crime, and Applicant knew there was bad blood between Debrezio Campbell and the victim they were visiting.

> Trial Counsel testified that there was gunshot residue found on the victim's left hand, but he was unable to find anyone to testify to the victim being left-handed.  Trial Counsel also testified that he thought delving into the specifics of the forensics, the "blood and guts" would ultimately harm his client rather than help his case.  Trial Counsel testified that the self-defense theory was so unstable based on the adverse fats stated above that only after extensive argument on the matter by Trial Counsel did Judge Alford agree to charge the jury on self-defense.  Trial Counsel testified that he had hired a gunshot residue expert in cases he had handled in the past but that he did not believe hiring a gunshot residue expert would have been of any help in the Applicant's case.

> The Applicant then called two expert witnesses.  The first, Steven Howard, was qualified as an expert in gunshot residue, and the second, Dr. Adel Shaker, was qualified as an expert in determining the presence of gunshot residue in firearm incidences.  The Court finds that the testimony of neither expert shows that Trial

19

Counsel's decision against hiring his own gunshot residue expert in defense of the Applicant's case renders Trial Counsel's assistance ineffective. Neither expert could offer definitive testimony that testing of the gunshot residue found on the scene would add any evidence or benefit to the Applicant beyond that done by the State's expert in trace evidence. Agent Jennifer Stoner, the State's expert, could show that the victim had or was reaching for a gun at the time he was shot. At trial, Agent Stoner testified that both the palm and back of each hand of the victim were tested and that particles were found on the left palm of the victim's hand consistent with those of gunshot residue. (TR p. 505, LL 18-24). Agent Stoner further testified that, while the gunshot residue found on the palm of the victim's left hand was not consistent with the victim having fired a weapon, she could not rule out the victim having handled the a [sic] gun. (TR p. 507, LL 23-24). In *Ard v. Catoe*, the Supreme Court of South Carolina found that, based on trial counsel's failure to acquire an expert witness to dispute the negative results from the tests for presence of gunshot residue, trial counsel's decisions were "unreasonable and clearly deficient" and his assistance was ineffective. 372 S.C. 318, 336 (2007). In the present case, however, the presence of gunshot residue on the person of the victim was not at issue. The prosecution's expert testified to the presence of gunshot residue on the victim, Trial Counsel cross-examined the expert, and the prosecution's expert arguably provided testimony that was not definitively refuted by any testimony presented by the Applicant at his PCR hearing. In point of fact the testimony presented at trial regarding the presence of gunshot residue and that presented at the PCR hearing are consistent.

The Court finds that Trial Counsel's decision against hiring a gunshot residue expert does not render his assistance deficient, as it was reasonable under the circumstances. Even if Trial Counsel's assistance could be construed as deficient, the Court finds that such a deficiency would not prejudice the Applicant, as the Court is not convinced that new testimony regarding the gunshot residue would change the result of the Applicant's case.

(R. at 1114–17.)

The state court's rejection of this claim of ineffective assistance of counsel does not warrant federal habeas relief. Indeed, the record supports the PCR court's findings. Trial counsel testified that he conferred with the SLED ballistics expert who testified that trial. (R. at 989–90.) And the record reflects that when trial counsel examined the State's expert, she admitted that the GSR on Victim's hand was consistent with his handling a weapon that had previously been fired. (R. at 510.) Though the State's expert testified that the GSR on Victim's hand could have come from touching one of his gunshot wounds, she admitted that the level of GSR on the wound had some correlation to what distance the gun was fired from. (*See* R. at 511.) An examination of the testimony by the GSR experts presented at the PCR evidentiary hearing reveals that there is nothing materially distinguishable between their testimonies regarding how the GSR could have gotten on Victim's

hand and the information that trial counsel elicited from the State's expert during cross-examination. (*See* R. at 508–13, 1017–61.)  And trial counsel explained during the PCR evidentiary hearing that he did not see how a GSR expert helped with his strategy for Petitioner's defense.  (R. at 995, 1017.) Accordingly, the undersigned concludes that the state court's rejection of this claim of ineffective assistance of counsel is not contrary to, or an unreasonable application of, clearly established federal law, nor did the state court adjudication result in an unreasonable determination of the facts. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."). The undersigned therefore recommends granting summary judgment to Respondent as to Ground Two.

**C.**     **Ground Three**

In Ground Three, Petitioner asserts counsel was ineffective for failing to request a jury instruction on the lesser included offense of voluntary manslaughter (Dkt. No. 1.)

The PCR court addressed this claim as follows:

> Looking, first, at the record before the Court, including the post-conviction relief hearing, there is no evidence addressing a charge on voluntary manslaughter. The trial record reflects that trial counsel did offer to the Court some requests to charge (TR p. 826, L 7 through p. 827, L 16) and that an in chambers charge conference took place. (TR p. 727, L 24 through p. 723, L2).  However, nothing regarding the charge was reflected on the record.

> The Court's post-conviction relief hearing notes do not reflect trial counsel being asked any questions by Applicant's counsel regarding the charge of voluntary manslaughter.  Therefore, the Court is unable to assess trial counsel's effectiveness regarding whether or not he was ineffective for failing to request such a charge. However, trial counsel did testify that the self-defense was "an imperfect self-defense."  Trial counsel testified that Applicant was not without fault in bringing on the difficulty that resulted in the victim's death.  Trial counsel testified that Applicant went to the scene with a loaded pistol, had been drinking, knew that a drug deal was to take place, knew of bad blood between his co-defendant and the deceased, knew his co-defendant was armed, and exited a car to place himself on the scene of the murder.  Trial counsel also testified that Applicant told him the victim reached for a gun which precipitated Applicant's shooting the victim, who was facing away from Applicant at the time.  Applicant testified that his co-defendant shot first and that the victim had gone for his gun first but never got his gun.  Applicant testified he actually never saw victim with a gun.  There is no testimony establishing that the victim reached for a gun, and no gun was found at the scene of the shooting.

As to voluntary manslaughter, our Supreme Court has held that a defendant is entitled to a charge on voluntary manslaughter where the facts warrant. *State v. Starnes*, 388 S.C. 590, 698 S.C.2d 604 (S.Ct. 2010).

*Starnes* set forth that at the time of the killing there must be both heat of passion and sufficient legal provocation. In his statement Applicant described the incident thusly:

> "I drunk to where I was overly intoxicated. I felt like I was ready to hurl and I was like, let's ride out so we can get some air. So the three of us left and I was driving at first, but then I was too drunk to drive and I pulled over and either Desmond or Debrezio drove. I don't know which one. I think I got in the back seat. I don't remember getting in or out of the car. 'Brezio stated, there goes the nigger that snucked me. I had my gun in my pants pocket. It was a .45 Auto. Whoever was driving did a U-turn and then we got out of the car and all I saw was the nigger reaching and pulling out. He was like reaching in his back and was like, no, and he was backing up and then my gun came out and I fired three shots. We jumped back in the car and I started drinking more liquor that I had in my car, because I thought that I had killed somebody. We went back to the crib and I went to sleep. When I woke up, the police was there. "Brezio called me like a couple of days before and told me about this nigger snucking him and I was like, do I know the nigger? And he told me that I had seen him one time in Stone Haven. I thought that this was, like, going to be a fight, but they told me that the dude was a drug dealer and he had bad boys." (TR p. 364, L 17 through p. 370, L 14).

The trial transcript reflects that the individuals involved in the shooting saw the victim reach toward his back before shots were fired. (*See* testimony of Desmond Campbell regarding what he was told by co-defendant Debrezio Campbell).

Based on the above, at the time of the charge, if requested, the trial judge may have charged voluntary manslaughter, but it is hard to conceive of any action by the victim rising to the level of legal provocation since Applicant was expecting a "fight." *Starnes, supra*, however, postdates Applicant's trial and so its analysis would not have been available to the trial judge. A review of the pre-*Starnes* cases exhibit a very fact specific analysis regarding whether or not a defendant is entitled to a charge of the lesser included offense of voluntary manslaughter in a murder trial.

The undersigned's analysis is of little, if any, value in judging what Applicant's trial judge would have done if requested to charge voluntary manslaughter. The most the Court, at this time, can say is that the trial judge very well may have afforded Applicant a charge on voluntary manslaughter, as the evidence supports a jury finding that the victim reached behind his back, as if for a weapon, prior to Applicant's co-defendant firing the first shot. On the other hand, where two armed men confront a third, expecting a fight and knowing the victim was a drug dealer with "bad boys," the trial judge may have refused the charge.

Because this issue was not presented to the Court at the post-conviction relief hearing, the allegation as it reflects on trial counsel was not addressed. As indicated above, references solely to the record do not allow the Court the opportunity to

analyze whether or not, as to this issue, Trial Counsel performed effectively or not. This being the case, the Court must find, as to the lesser included charge issue, that Applicant has failed to establish by a preponderance of the evidence that Trial Counsel was ineffective in his representation of Applicant.

Trial counsel was not given an opportunity to address the charge issue as he was asked no questions about it at the post-conviction relief hearing. Therefore, it would be difficult for the Court to find trial counsel's failure to request a voluntary manslaughter charge to constitute ineffective assistance of counsel. The burden is on Applicant to prove his allegations, and neither Applicant nor the Court may rely on an absence of evidence on an issue to support a ground for ineffective assistance of counsel.

Assuming trial counsel was ineffective for failing to request a charge on voluntary manslaughter, Applicant has failed to show he was prejudiced thereby. In addition to being charged and tried for murder, Applicant was charged and tried for criminal conspiracy. The criminal conspiracy indictment reads:

> Christopher Wood did in York County, South Carolina on or about June 26, 2004, willfully and unlawfully unite, combine, conspire, confederate, agree and/or have tacit understanding with Debrezio Campbell and/or others for the purpose of committing the crime of Murder against Arvell Bagley, in violation of Section 16-17-410, Code of Laws of South Carolina, (1976, as amended).

The jury found Applicant guilty of conspiring to commit Murder. Therefore, a finding that Applicant was guilty of voluntary manslaughter would have been inconsistent with the conspiracy verdict.

The trial judge charged the jury that they could convict Applicant on a charge only if the State has established guilt beyond a reasonable doubt. (TR p. 792, LL 24-25). Further, as to conspiracy, the trial judge charged:

> To establish conspiracy it is necessary first that an agreement to commit the offense alleged in the Indictment be established. (TR p. 814, LL 14-16) (Emphasis added).

XXX

> The State must prove further that one or more of the parties engaged in the agreement or committed some act to effect the object of the conspiracy as alleged in the Indictment. (TR p. 814, LL 22-25).

XXX

> . . . before any person can be found guilty of the charge of conspiracy, it must appear beyond a reasonable doubt that the conspiracy was found, in this instance, to commit murder and that the particular person was an active party to it. (TR p. 815, LL 19-23) (Emphasis added).

> From the trial judge's charge to the jury on the law regarding what findings of fact are required to find a person guilty of criminal conspiracy, and based on the jury's return of a guilty verdict on that charge of conspiring to commit murder, it appears to the Court that a finding of guilt of voluntary manslaughter would have been inconsistent with the guilty conspiracy verdict.

(R. 1148–52 (footnote omitted).)

The PCR court found that Petitioner failed to establish his claim of ineffective assistance of counsel where he failed to present any evidence as to why trial counsel did not request a voluntary manslaughter charge. There is fair support in the record for that finding. Additionally, the PCR court declined to find that the trial court would have charged voluntary manslaughter even if it had been requested. That conclusion by the PCR judge stems from his own interpretation of state law, which is entitled to deference. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))). For these reasons, Petitioner is not entitled to federal habeas relief on his claim that counsel was ineffective in failing to request a charge on voluntary manslaughter. *See Harrington*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough*, 541 U.S. at 652)).

Petitioner further asks that this Court "find cause pursuant to Martinez for his failure to raise the lesser included offense issue at the PCR hearing." (Dkt. No. 1.) However, *Martinez* only provides an avenue for a habeas petitioner to overcome a procedural bar.[8] And Respondent has not

---

[8] Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012).

asserted that Petitioner's Ground Three is procedurally barred. (*See* Dkt. No. 7 at 19).  Consequently, the undersigned need not make that inquiry.

For the above reasons, the undersigned recommends concluding that Petitioner is not entitled to relief on his Ground Three.

## D.     Ground Four

Lastly, Petitioner contends in his Ground Four that the indictments against him were obtained in violation South Carolina state law.  (Dkt. No. 1.)  In particular, he claims that though the indictments purport to have been obtained "'At a Court of General Sessions convened on February 17, 2005[,]'" there was no Court of General Sessions convened on that date in York county.  (Dkt. No. 1).  As a result, he asserts "Extrinsic Fraud upon the Court/Prosecutorial Misconduct/Denial of Due Process & Equal Protection of Law Additionally cause for PCR attorney failure to raise the issue."  (Dkt. No. 1.)

Respondent contends Ground Four is not cognizable as it does not contemplate a violation of federal law.  The undersigned agrees.  Though Petitioner references both the Due Process Clause and the Equal Protection Clause, it is unclear how any alleged deficiencies in Petitioner's indictments would deprive Petitioner of those constitutional rights.  A federal court may grant habeas relief "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  To the extent Petitioner is challenging the state court's jurisdiction in his criminal case due to alleged defects in the indictments, that claim arises out of state law and is not cognizable.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  Jurisdiction is a non-cognizable state law issue.  *See Wright v. Angelone*, 151 F.3d 151, 156–58 (4th Cir. 1998). Accordingly, the undersigned recommends granting summary judgment to Respondent as to Ground Four.

**CONCLUSION**

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 6) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[9]

IT IS SO RECOMMENDED.

_____

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

January 29, 2016
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[9]Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).