IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Christopher A. Woody, | ) | |
| | ) | C/A No. 2:15-2574-MBS |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Warden Robert Stevenson, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Christopher A. Woody is an inmate in custody of the South Carolina Department of Corrections.  Petitioner currently is housed at the Broad River Correctional Institution in Columbia, South Carolina.  Petitioner, proceeding pro se, filed a petition for writ of habeas corpus on June 26, 2015, alleging that he is being detained unlawfully.  See 28 U.S.C. § 2254.

## I. BACKGROUND

On June 26, 2004, Arvell Bagley returned home to his apartment complex at Paces River in Rock Hill, South Carolina.  Transcript of Record, ECF No. 7-1, 169.  As Mr. Bagley approached his apartment complex, a champagne Nissan Maxima made a U-turn to follow Mr. Bagley's vehicle. Id. at 154-57, 162.  Mr. Bagley parked, exited his vehicle, called out to his neighbor Kimberly Bowden, and walked towards his apartment.  Id. at 158-59.  The Maxima stopped behind Mr. Bagley.  Two individuals, Debrezio Campbell, armed with a .25 semi-automatic; and Petitioner, carrying a .45 automatic, exited the car and proceeded to shoot Mr. Bagley.  Id. at 159; 299-319. According to Dr. James Maynard, a York County Pathologist, Mr. Bagley suffered four gunshot wounds—one fatal wound to the chest from the .25 caliber weapon, one fatal wound to the back of his head from the .45 caliber weapon, and two other wounds from the .45 caliber weapon.  Id. at 299-319.

After the shooting, as neighbors came to render aid to Mr. Bagley, Petitioner and Campbell escaped the apartment complex in the Maxima. Id. at 162, 189. Early the next morning, June 27, 2004, members of the Rock Hill Police Department located the Maxima, which was registered to a relative of Petitioner. Id. at 344-54. Inside the car, police found the .45 caliber weapon, which was registered to Petitioner in Virginia. Id. Police also located Campbell and Petitioner at a nearby apartment. Transcript of Record, ECF No. 7-2, 348-49; 359. Campbell and Petitioner were arrested and taken to the Rock Hill Police Department City Jail. Id. at 359-61. Petitioner was not questioned at that time because he was very boisterous, intoxicated, and cursing. Id. at 358.

On the morning of June 29, 2004, Petitioner signed a waiver of his Miranda[1] rights, including his right to an attorney. Petitioner provided the following statement to Charlene Blackwelder, a detective with the Rock Hill Police Department:

> I drunk to where I was overly intoxicated. I felt like I was ready to hurl and I was like, let's ride out so we can get some air. So the three of us left and I was driving at first, but then I was too drunk to drive and I pulled over and either Desmond or Debrezio drove. I don't know which one. I think I got in the back seat. I don't remember getting in or out of the car. 'Brezio stated, there goes the nigger that snucked me. I had my gun in my pants pocket. It was a .45 Auto. Whoever was driving did a U-turn and then we got out of the car and all I saw was the nigger reaching and pulling out. He was like reaching in his back and was like, no, and he was backing up and then my gun came out and I fired three shots. We jumped back in the car and I started drinking more liquor that I had in my car, because I thought that I had killed somebody. We went back to the crib and I went to sleep. When I woke up, the police was there. 'Brezio called me like a couple of days before and told me about this nigger snucking him and I was like, do I know the nigger? And he told me that I had seen him one time in Stone Haven. I thought that this was, like, going to be a fight, but they told me that the dude was a drug dealer and he had bad boys.

Id. at 369-70.

Petitioner was charged with murder, in violation of S.C. Code Ann. § 16-3-10; possession

---

[1] Miranda v. Arizona, 384 U.S. 463 (1966).

2

of a firearm during the commission of a violent crime, in violation of S.C. Code Ann. § 16-23-490; criminal conspiracy, in violation of S.C. Code Ann. § 16-17-410; and carrying a pistol unlawfully, in violation of S.C. Code Ann. § 16-23-20.  Id. at 1154-59.  Petitioner proceeded to trial on May 2, 2005, in the Court of General Sessions for York County, South Carolina, before the Honorable Lee S. Alford.  Petitioner was represented by John Delgado, Esquire.

The court held a Jackson v. Denno[2] hearing prior to trial to determine the admissibility of Petitioner's statement.  Transcript of Record, ECF No. 7-1, 85.  At the hearing, the state called Charlene Blackwelder, a detective with the Rock Hill Police Department.  Id. at 87.  Blackwelder testified that she spoke with Petitioner on June 29, 2004.  Id. at 98.  Blackwelder confirmed that she advised Petitioner of his Miranda rights, inquired into Petitioner's educational background, questioned Petitioner about his understanding of his rights, and did not threaten or make promises to Petitioner.  Id. at 98-104.  Blackwelder also testified that Petitioner executed a waiver of his rights and proceeded to give a statement.  Id.  Blackwelder stated that she typed the statement, and gave Petitioner an opportunity to review and make changes to the statement.  Id.  Blackwelder further testified that, to her knowledge, Petitioner did not ask for an attorney at any time between his arrest and his statement.  Id. at 107.

Petitioner testified that he had requested an attorney when he was arrested at the apartment and later at the police station.  Petitioner also testified that he asked for an attorney after he read the Miranda warning.  Id. at 116-17.  However, on cross examination, Petitioner stated that no one threatened him or promised him anything in exchange for his statement.  Id. at 117-119.  Petitioner admitted that he voluntarily gave his statement in a desire to "go home, to be honest with you."  Id.

---

[2] Jackson v. Denno, 378 U.S. 368 (1964).

3

at 120.

      The trial judge, looking at the totality of the circumstances, determined:

> that by preponderance of the evidence that the state has established that the statement given by the Defendant was freely and voluntarily given with full advice concerning his constitutional rights and a knowing, intelligent waiver of those rights that he made that statement.

Id. at 123.

      At trial, in addition to introducing Petitioner's statement, the state called Agent Jennifer Stoner of the South Carolina Law Enforcement Division State Evidence Department as an expert in trace evidence analysis. Transcript of Record, ECF No. 7-2, 492. Agent Stoner testified that the palm and back of each of the victim's hands were tested and particles consistent with those of gunshot residue (GSR) were found on the left palm of the victim's hand. Id. at 505. Agent Stoner did not feel the GSR was "consistent with him having fired a weapon," but she could not "rule out that he handled a weapon." Id. at 507. On cross examination, trial counsel elicited some concessions from Agent Stoner. See id. at 510. Trial counsel did not present his own GSR expert witness. Petitioner did not testify at trial.

      At the conclusion of trial, the trial judge charged the jury as to murder and did not include a voluntary manslaughter jury charge. Transcript of Record, ECF No. 7-4, 803-806. Petitioner was found guilty on all counts. The trial judge sentenced Petitioner to life without parole for murder, five years in prison for possession of a weapon during the commission of a violent crime; five years in prison for criminal conspiracy, and one years' imprisonment for carrying a pistol unlawfully, said sentences to run concurrently. Id. at 853.

      Petitioner appealed his conviction and sentence. Petitioner was represented by Joseph L.

Savitz, III, Equire of the South Carolina Commission on Indigent Defense. An <u>Anders</u>[3] brief was filed with the South Carolina Court of Appeals raising the following issue:

> The trial judge committed reversible error by denying a mistrial after the Assistant Solicitor argued in essence that the judge expected the jury to find appellant guilty?

<u>Id.</u> at 856-65.

The South Carolina Court of Appeals dismissed the appeal by unpublished opinion on September 11, 2008. <u>Id.</u> at 881-83. Petitioner filed a petition for rehearing, which was denied on December 19, 2008. <u>Id.</u> at 893. Next, Petitioner filed a petition for writ of certiorari in the Supreme Court of South Carolina, arguing the same issue raised with the South Carolina Court of Appeals. <u>Id.</u> at 895-902. On November 4, 2009, the Supreme Court of South Carolina denied the petition. <u>Id.</u> at 918-19. The matter was remitted to the lower court on November 9, 2009. <u>Id.</u> at 920.

Petitioner filed an application for post-conviction relief (PCR) on August 2, 2010. Petitioner raised the following grounds for relief:

> The Applicant's Right to "Effective Assistance Of Counsel," As Guaranteed By The Sixth Amendment To The United States Constitution And South Carolina Law Was Violated By The Following Failures And/Or Omissions Made By Trial Counsel:
>
> Issue 1.    Trial Counsel Failed to adequately research Constitutional and legal issues material to the trial he prepared and to prudently preserve those material legal issues for Direct Appeal.
>
> Issue 2.    Trial Counsel Failed to conduct sufficient pretrial research and investigation to adequately evaluate and challenge the State's gunshot residue testimony.
>
> Issue 3.    Trial Counsel Failed to interview the Applicant's codefendant's pretrial[.] Thus, Counsel was unable to anticipate and prepare to counter, through targeted research and investigation, the difficulties and problems likely to arise through his attempts to introduce "exculpatory" and corroborative evidence from those witnesses.

---

[3] <u>Anders v. California</u>, 386 U.S. 738 (1967).

Issue 4.      Trial Counsel Failed to present readily available evidence pertaining to the alleged Victim's known reputation for violence. The evidence available was based on incidents that the Police were aware of involving the deceased acting in criminal/drug related matters associated with violence.

Issue 5.      Trial Counsel Failed to take exception to the overly complex and confusing self-defense Jury charge.

The Applicant's Right To 'Effective Assistance Of Counsel,' As Guaranteed By The Sixth And Fourteenth Amendment To The United States Constitution And South Carolina Law Was Violated By Appellate Counsel's Failures To Appeal The Following Issues:

Issue 6.      The Directed Verdict Motion made relative to the 'Conspiracy to Commit Murder' offense.

Issue 7.      The trial Judge's Abuse of Discretion by excluding codefendant's exculpatory statements from the defense's case-in-chief. The trial Judge's decision was a (reversible) prejudicial error of law, as he declared those statements to be 'testimonial hearsay' that was inadmissible under any circumstances.

Issue 8.      A new non-retroactive watershed rule of law holding that; (A jury charge explaining that 'Malice Aforethought' may be inferred by the use of a deadly weapon is an unconstitutional charge of law when "Self Defense" has been properly and legitimately raised at trial).

The Applicant's Rights To "Due Process" And "Equal Protection" As Guaranteed By The Fifth And Fourteenth Amendments To The United States Constitution And South Carolina Law Was Violated Based On Prosecutorial Misconduct Due To The State's Acquisition Of Indictments By Methods Encompassing The Following Specific Acts:

Issue 9.      The Solicitor/Assistant Solicitor acquired the indictments used to prosecute the Applicant by way of a total non-compliance with a mandatory statute that is jurisdictional in nature.

Issue 10.      The Solicitor/Assistant Solicitor acquired the indictments used to prosecute the Applicant by way of both "intrinsic and extrinsic" fraud.

Issue 11.      The Solicitor/Assistant Solicitor acquired the indictments by acts of "perjury" as defined by State Law.

6

Issue 12.      The Solicitor/Assistant Solicitor acquired the indictments by acts defined as "Criminal Conspiracy" by State Law.

Issue 13.      Facts have arisen that implicate whether the Trial Court properly had either "personal" and/or "subject matter" jurisdiction to render judgments and sentences against the Applicant based on the improper and illegally obtained indictments.

Applicant's Rights to "Due Process" and "Equal Protection" as Guaranteed By The Fifth and Fourteenth Amendments To The U.S. Const. And State Law was violated by Prosecutorial Misconduct.

Issue 14.      Solicitor/Assistant Solicitor's Acts of Perjury And/Or which caused Applicant to miss making contemporaneous objection to the grand jury and its indictment, and/or moving for void judgment after conviction.

Applicant's Rights to Effective Assistance of Counsel" as Guaranteed By the Sixth and Fourteenth Amendments of the U.S. Const. And State Law was violated Issue

Issue 15.      Trial Counsel Failed to Request Jury Instructions on The lesser Included Offense of Voluntary Manslaughter.

Id. at 923-38.  Petitioner, through PCR counsel Harry L. Devoe, Jr., supplemented his claims by filing an amended PCR application on April 29, 2013.  Id. at 952-56.

A hearing on Petitioner's PCR application was held on May 13, 2013, before the Honorable John C. Hayes, III.  Id. at 957-1000; Transcript of Record, ECF No. 7-5, 1001-94.  Bryson Barrowclough of the Sixteenth Circuit Public Defender's Office testified that his office was appointed to represent Petitioner and his co-defendants on June 28, 2004, but because of the potential conflict represented only Debrezio Campbell.  Id. at 967.  PCR counsel then questioned trial counsel about the Jackson v. Denno hearing and a two page document that was "[c]locked by the Clerk of Court of York County on [June] 28th,"[4] which apparently was the document notifying the public defender of its appointment to represent Petitioner.  Transcript of Record, ECF No. 7-4,

---

[4] PCR counsel did not introduce the document in question at the hearing.

7

996-998.  Trial counsel testified:

> A.     All right, sir. I don't recall necessarily how—So your point is I should have objected to that coming into evidence against—
>
> Q.     No, I'm asking you wouldn't that help you in your Jackson v. Denno hearing if you had that document [showing Petitioner had been appointed counsel]?
>
> A.     I—It could have, sir. I don't recall exactly how that would have deflected whatever Chris said during that statement. I mean he could have made a voluntary statement whether or not that—he could have made a voluntary statement at any time whether or not he was Mirandized or not.  But the point being, sir, it possibly could have helped him.
>
> Q.     And the Solicitor did not give you a copy of that.  In your discovery from the Solicitor he didn't give you a copy of that did he?
>
> A.     That, sir, I'll be candid with you I can't say to you truthfully one way or the other that happened. I don't know the answer to that.
>
> Q.     Well if you had had it would you have raised that to the judge at that time of that Jackson v. Denno hearing?
>
> A.     I think I would have been able to point that out to the court as to whether or not it was a voluntary statement or whether or not the statement was made under his constitutional rights to counsel and to a fair trial and the Fifth and Sixth Amendments. But I don't recall whether he had that or whether I got that.  I'll be candid with you, Mr. Devoe, I do not recall.

Id.

Trial counsel also testified that he pursued an "imperfect self-defense" case theory because Petitioner told him that he was scared he would be killed the night of the incident and that he had seen the victim reaching behind his body for a gun.  Id. at 973-88.  Trial counsel further testified that he has used GSR experts in other cases, but he did not think a GSR expert would have advanced Petitioner's case.  Id. at 991-1000; Transcript of Record, ECF No. 7-5, 1001-09.  Trial counsel did not address the jury charge issue during the PCR hearing.

Next, PCR counsel called Steven Howard, a qualified expert in GSR, to provide proof that

trial counsel was ineffective for failing to call a GSR expert. Transcript of Record, ECF No. 7-5, 1017-42. PCR counsel also called Dr. Adel Shaker, an expert in determining the presence of GSR in firearm incidences. Id. at 1047-48. Dr. Shaker explained that in his opinion, the victim was shot in the side as claimed by Petitioner, not from behind as claimed by the state's expert. Id. at 1057-58. Lastly, Petitioner testified at the PCR hearing in support of his application. Id. at 1063-83.

On May 23, 2013, the PCR judge filed an order finding that no evidence was presented by Petitioner at the PCR hearing to support the allegation that trial counsel was deficient during the discovery portion of Petitioner's case. Id. at 1111-17. The PCR judge also found that trial counsel was not ineffective for not allowing Petitioner to testify because trial counsel properly notified Petitioner of his right to testify and Petitioner declined to testify.

In addition, the PCR judge ruled that trial counsel was not ineffective for failing to hire a GSR expert to assist in Petitioner's defense. Examining Mr. Howard and Dr. Shaker's GSR expert testimony, the PCR judge found that:

> neither expert shows that Trial Counsel's decision against hiring his own gunshot residue expert in defense of the Applicant's case renders Trial Counsel's assistance ineffective. Neither expert could offer definitive testimony that testing of the gunshot residue found on the scene would add any evidence or benefit to the Applicant beyond that done by the State's expert in trace evidence.

Id. at 1116. The PCR judge noted that trial counsel cross examined the state's GSR expert at trial, and that "the testimony presented at trial regarding the presence of gunshot residue and that presented at the PCR hearing are consistent." Id. at 1116-17. Ultimately, on the GSR issue, the PCR judge concluded that:

> Trial Counsel's decision against hiring a gunshot residue expert does not render his assistance deficient, as it was reasonable under the circumstances. Even if Trial Counsel's assistance could be construed as deficient, the Court finds that such a deficiency would not prejudice the Applicant, as the Court is not convinced that new testimony regarding the gunshot residue would change the result of the Applicant's

case.

Id. at 1117.  Accordingly, the PCR judge denied and dismissed with prejudice Petitioner's PCR application.  Id.

Petitioner filed a memorandum in support of the PCR application, which the PCR judge responded to by letter, indicating that the issue was already ruled upon. Id. at 1118-27. Subsequently, Petitioner filed a motion for reconsideration pursuant to S.C. R. Civ. P.  59(e), specifically arguing that trial counsel provided ineffective assistance of counsel by failing to request a charge of voluntary manslaughter. Id. at 1128-40.  In an order dated July 16, 2013, the PCR judge determined that the facts of the case did not necessarily warrant a charge for voluntary manslaughter; therefore, he could not determine if the trial judge would have included a voluntary manslaughter instruction if trial counsel had requested the charge. Id. at 1150.  Thus, the PCR judge denied Petitioner's Rule 59(e) motion.  Id. at 1152.

Petitioner, through Tara Dawn Shurling, Esquire, timely filed a petition for writ of certiorari to the South Carolina Supreme Court on September 10, 2014.  ECF No. 7-8.  Petitioner raised the following issues:

I.   Did Petitioner's original appointed attorney violate his right to counsel by failing to be present at Applicant's bond hearing?

II.  Did Petitioner's Trial Attorney fail to use readily available documentation to support the defense in the Jackson v. Denno hearing where Court documents established that Petitioner had been appointed Counsel, at his request, prior to being questioned by law enforcement and before his statement was issues [sic]?

III. Were Petitioner's rights to Discovery of potentially exculpatory material violated where the State failed to turn over documents relating to the appointment of counsel in petitioner's case?

IV.  Did Trial Counsel fail to conduct sufficient pretrial research and investigation to adequately evaluate and challenge the State's gunshot

residue testimony?

     V.      Did Trial Counsel fail to provide Petitioner effective assistance of counsel in that he neglected to request jury instruction on the lesser included offense of voluntary manslaughter where the evidence adduced at trial supported a charge on the lesser-included offense.?

ECF No. 7-8 at 3 (errors in original).

The South Carolina Supreme Court denied the petition for a writ of certiorari on March 18, 2015. ECF No. 7-10. Remittitur was sent down on April 3, 2015. ECF No. 7-11.

In his § 2254 petition, Petitioner raises the following issues:

1.      Ineffective assistance of trial counsel and/or related denial of due process because trial counsel failed to introduce an order appointing counsel to represent Petitioner, during the <u>Jackson v. Denno</u> hearing prior to Petitioner's trial.

2.      Ineffective assistance of trial counsel because trial counsel failed to conduct necessary pretrial research and investigation to adequately evaluate and challenge the State's case.

3.      Ineffective assistance of trial counsel because trial counsel failed to request jury instructions on the lesser included offense of voluntary manslaughter when the evidence presented at trial supported such a charge.

4.      Extrinsic fraud upon the court/prosecutorial misconduct/denial of due process or equal protection of law because a Petitioner's indictment contained false court term information. Additionally, ineffective PCR counsel for failing to raise this issue.

<u>See</u> <u>generally</u> ECF No. 1.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Mary Gordon Baker for a Report and Recommendation. The petition is governed by the terms of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996.

Respondent filed a motion for summary judgment on August 24, 2015. By order filed

August 24, 2015, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised of the summary judgment procedures and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition on September 28, 2015. On January 29, 2016, the Magistrate Judge issued a Report and Recommendation. ECF No. 11.

As to Ground One, the Magistrate Judge found that the PCR judge did not specifically address the claim that trial counsel was ineffective for failing to introduce an appointment of counsel order during the <u>Jackson v. Denno</u> hearing. Nevertheless, the Magistrate Judge determined that Petitioner's claim lacked merit because, regardless of the existence of appointment of counsel documents, trial counsel presented evidence through Petitioner's own testimony that Petitioner had requested counsel prior to giving his statement. Additionally, the Magistrate Judge found that, even if trial counsel was deficient for failing to introduce an appointment document to demonstrate that Petitioner was represented by counsel, Petitioner was not prejudiced. Petitioner's own testimony at the <u>Jackson v. Denno</u> hearing established that he knowingly and intelligently waived his constitutional rights, and freely and voluntarily gave a statement. The Magistrate Judge also concluded that, even if Petitioner's statement should have been suppressed as involuntary, Petitioner failed to overcome the overwhelming evidence of guilt presented at trial. Further, to the extent Petitioner argued that the state violated <u>Brady</u> by failing to turn over an appointment document, the Magistrate Judge noted that the document in question was held by the Clerk of Court's and the public defender's office, such that the document did not constitute exculpatory evidence withheld by the solicitor. The Magistrate Judge therefore held that the PCR judge reasonably rejected Petitioner's contentions as to this ground.

As to Ground Two, the Magistrate Judge agreed with the PCR judge's determination that trial counsel's decision not to hire a GSR expert did not constitute ineffective assistance of counsel.

The Magistrate Judge determined that the record supported the PCR judge's finding that the testimony elicited by trial counsel on cross-examination of the state's experts was consistent with the GSR evidence presented by Petitioner's experts at the PCR hearing. Accordingly, the Magistrate Judge determined that the PCR judge correctly rejected Petitioner's ineffective assistance of counsel claim.

As to Ground Three, the Magistrate Judge found that the PCR judge appropriately ruled that trial counsel was not ineffective for failing to request a jury instruction on the offense of voluntary manslaughter. The Magistrate Judge declined to overrule the PCR judge's interpretation of state law in which the PCR judge declined to find that the trial court would have charged voluntary manslaughter if trial counsel had requested the instruction. As to Ground Four, the Magistrate Judge determined that Petitioner's assertions of fraud, prosecutorial misconduct, denial of due process, and equal protection of the laws did not address violations of federal law. The Magistrate Judge found that claims stemming from alleged defects in Petitioner's indictments arise out of state law; therefore, the issue is not cognizable by the federal court. Accordingly, the Magistrate Judge recommended that summary judgment in favor of Respondent be granted. Petitioner filed objections to the Report and Recommendation on February 9, 2016. ECF No. 13.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. Id. This court is obligated to conduct a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. Id.

13

## II. DISCUSSION

A writ of habeas corpus shall not be granted for any claim that was adjudicated on the merits in a state court proceeding unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The limited scope of federal review of a state petitioner's habeas claims is grounded in fundamental notions of state sovereignty. Richardson v. Branker, 558 F.3d 128, 138 (4th Cir. 2012) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011)). When a federal court adjudicates a habeas corpus petition brought by a state prisoner, that adjudication constitutes an intrusion on state sovereignty. Id. (citing Harrington, 562 U.S. at 103). A federal court's power to issue a writ is limited to exceptional circumstances, thereby helping to ensure that "'state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding.'" Id. (citing Harrington, 562 U.S. at 103). The restrictive standard of review "'further[s] the principles of comity, finality, and federalism.'" Id. (citing Williams v. Taylor, 529 U.S. 362, 364 (2000)). "'The pivotal question is whether the state court's application of the [applicable federal legal] standard was unreasonable.'" Id. (quoting Harrington, 562 U.S. at 103). So long as fairminded jurists could disagree on the correctness of a state court's decision, a state court's adjudication that a habeas claim fails on its merits cannot be overturned by a federal court. Id. (citing Harrington, 562 U.S. at 102).

Petitioner contends that he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner ordinarily must satisfy both parts of the two-part

14

test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The petitioner first must show that counsel's representation fell below an objective standard of reasonableness. <u>Id.</u> at 687–88. In making this determination, a court considering a habeas corpus petition "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. However, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. <u>Id.</u> at 691-92 (citing <u>United States v. Morrison</u>, 449 U.S. 361, 364–65 (1981)). "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." <u>Id.</u> at 692.

Law/Analysis

A.     <u>Failure to Introduce an Order Appointing Counsel to Suppress Petitioner's Statement</u> (Ground One)

Petitioner raises no specific objections to the Magistrate Judge's findings. Rather, Petitioner contends that trial counsel was ineffective for failing to collect documents from the Clerk of Court prior to the <u>Jackson v. Denno</u> hearing document. Petitioner also contends that the Magistrate Judge should have considered his psychological condition prior to Detective Blackwelder taking his statement. Petitioner reasserts that he had to "suffer through the traumatic shooting experience on his own without any assistance from professional or family (Mother)." ECF No. 13, 2.

Petitioner is required to squarely present all issues to the South Carolina appellate courts to avoid procedural default upon federal habeas review. <u>See</u> <u>Joseph v. Angelone</u>, 184 F.3d 320, 328 (4th Cir. 1999). Petitioner's assertions constitute new grounds for relief that are procedurally barred.

15

In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). The court discerns no clear error in the Magistrate Judge's determination that trial counsel was not ineffective regarding the appointment of counsel issue.

B.    Failure to Conduct a Proper Pretrial Investigation (Ground Two)

Petitioner asserts the Magistrate Judge erred in ruling that trial counsel's decision not to hire a GSR expert did not constitute ineffective assistance of counsel. Petitioner argues that the testimony of Mr. Howard and Doctor Shaker at the PCR hearing proves that trial counsel should have called his own expert to testify in Petitioner's defense at trial. Petitioner contends that GSR testimony would have refuted the state's evidence of malice.

However, as the Magistrate Judge properly noted, the testimony provided by the GSR experts at the PCR hearing was not materially distinguishable from the information trial counsel was able to elicit from the state's GSR expert during cross-examination, particularly as to the admission that there was gun residue on Bagley's hand that was consistent with his having handled a weapon. Petitioner's objections are without merit.

C.    Failure to Request a Voluntary Manslaughter Jury Instruction (Ground Three)

Petitioner reiterates his position that the trial judge was required to charge the jury as to voluntary manslaughter based on Petitioner's contention that Bagley was reaching for a weapon when he was shot. As the Magistrate Judge properly observed, the PCR judge determined that the evidence did not support a charge of voluntary manslaughter. See State v. Cole, 525 S.E.2d 511 (S.C. 2000) (noting that voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation). The PCR judge noted that the issue was not

16

addressed at the PCR hearing by trial counsel, and thus the PCR judge was without the benefit of

trial counsel's testimony as to whether he considered requesting a voluntary manslaughter charge.

The PCR judge held, therefore, that Petitioner had failed to meet his burden of showing trial counsel

was ineffective for failing to request the voluntary manslaughter charge.  See Butler v. State, 334

S.E.2d 813 (S.C. 1985) (holding that burden of proof is on the application in a PCR proceeding to

prove the allegations in his application).

After a careful review of the PCR judge's analysis, the Magistrate Judge properly deferred

to the PCR judge's determination that trial counsel's performance was not deficient.  Petitioner's

objection is without merit.

D.    Petitioner's Indictment Contained False Court Term Information (Ground Four)

Finally, Petitioner contends that the Magistrate Judge erred in finding that Ground Four of

Petitioner's petition did not contain cognizable claims for federal habeas review.  Petitioner submits

that the solicitor subverted the state indictment process and deprived him of his due process and

equal protection rights by seeking a murder indictment rather than a voluntary manslaughter

indictment.  As the Magistrate Judge properly found, Petitioners claims of defects in the indictments

arise out of state law.  Petitioner's objection is without merit.

## III.  CONCLUSION

The court adopts the Report and Recommendation and incorporates it herein by reference.

For the reasons stated herein and in the Report and Recommendation, Respondent's motion for

summary judgment (ECF No. 6) is **granted**.  Petitioner's § 2254 petition is denied and dismissed,

with prejudice.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir.2001). The court concludes that Petitioner has not made the requisite showing.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Margaret. B. Seymour
Senior United States District Judge

Columbia, South Carolina

March 31, 2016

**NOTICE OF RIGHT TO APPEAL**

**Petitioner is hereby notified of the right to appeal this order
pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**